AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 JAN 14 PM 2:41

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                                        ) Case No. 1:21MJ-031
250 South Nelson Ave., Lot 72  )
Wilmington, Ohio  )
                                                        )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Southern    District of    Ohio   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(c) | Interstate Threats |
| 18 U.S.C. 1512(b)(3) | Tampering with a Witness by Threat |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Caleb Yokley, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/14/21

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Description of Premises to be Searched

The Premises to be searched is 250 South Nelson Ave., Lot 72, Wilmington, Ohio, further described as a prefabricated mobile home, predominantly white in color, with the number "72" clearly displayed on the front of the structure.





# ATTACHMENT B

## Particular Things to be Seized

All evidence and information relating to violations of Title 18, United States Code, Sections 875(c) (Interstate Threats) and 1512(b)(3) (Tampering with a Witness by Threat) involving Justin Stoll, including without limitation:

1. Cellular or satellite phones;
2. Any computer or digital medium that is capable of storing photos or video;
3. Weapons that may be used in connection with the threats, including firearms and ammunition;
4. All records or evidence relating to any social media accounts, passwords, or monikers used by Justin Stoll.
5. All records or evidence pertaining to Justin Stoll's whereabouts and activities from January 1, 2021, to the present.
6. All records or evidence relating to Justin Stoll's travel to and activities in Washington, D.C. on or about January 6, 2021.

With respect to any phones seized during the execution of the search of the Premises described in Attachment A ("PHONE"), law enforcement personnel are authorized to press the fingers (including thumbs) of Justin Stoll to the Touch ID sensor of the PHONE, such as an iPhone or Google Pixel, found at the Premises for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

For any computer or storage media ("COMPUTER"), including smart phones and satellite phones, seized pursuant to this warrant, law enforcement may search for:

1. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

2

browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2. evidence indicating how, where, and when the COMPUTER was accessed or used to determine the chronological and geographical context of access, use, and events relating to crime under investigation and to the COMPUTER user;

3. evidence indicating the COMPUTER user's state of mind as it relates to the crime under investigation;

4. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

5. evidence of the times the COMPUTER was used;

6. All records or evidence relating to any social media accounts, passwords, or monikers used by Justin Stoll.

7. All records or evidence pertaining to Justin Stoll's whereabouts and activities from January 1, 2021 to the present.

8. All records or evidence relating to Justin Stoll's travel to and activities in Washington, D.C. on or about January 6, 2021.

This warrant authorizes a review of the electronic devices seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

FILED
RICHARD W. NAGEL
CLERK OF COURT
2021 JAN 14 PM 2:41
U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>250 South Nelson Ave., Lot 72<br>Wilmington, Ohio | Case No. 1:21MJ-031<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Caleb Yokley, a Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for the premises at 250 South Nelson Ave., Lot 72, Wilmington, Ohio (the "PREMISES").

2. The places to be searched are described herein and in Attachment A, and the items to be seized are described herein and in Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2019. I am assigned to the Cincinnati Division's Joint Terrorism Task Force. In this capacity, I am responsible for investigating violations of Title 18 of the United States Code and other violations of federal law. I have conducted and participated in investigations that involved the use of advanced investigative techniques such as: execution of search warrants on computers, emails, other electronic devices and physical structures; physical and electronic surveillance, and vehicles. During my investigations, I have participated in witness interviews, subject interviews, and analysis of evidentiary items. I have received specialized training in interviewing and interrogation techniques, search and seizure, and other investigative techniques.

4. Prior to joining the FBI, I was an Assistant District Attorney (ADA) for the Knox County District Attorney's Office. As an ADA, I was primarily responsible for prosecuting criminal cases involving domestic violence, firearms offenses, and other misdemeanor and felony violations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that JUSTIN STOLL has committed violations of Title 18, United States Code, Sections 875(c) (Interstate Threats) and 1512(b)(3) (Tampering with a Witness by Threat) within the Southern District of Ohio, and that evidence of such crimes will be found at the PREMISES.

## APPLICABLE LAW

7. Under 18 U.S.C. § 875(c), it is unlawful to knowingly transmit in interstate commerce a communication containing a threat to kidnap or injure a person, where the defendant transmitted the communication for the purpose of making a threat or knowing that the communication would be viewed as a threat.

8. Under 18 U.S.C. § 1512(b)(3), it is unlawful to knowingly intimidate or threaten, or attempt to intimidate or threaten, another person with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

**PROBABLE CAUSE**

9. The Federal Bureau of Investigation and the United States Attorney's Office for the Southern District of Ohio are investigating a riot that occurred at the U.S. Capitol building on January 6, 2021, and whether individuals from this District may have traveled to Washington, D.C., with the intent to commit federal crimes.

10. In connection with that investigation, FBI learned of a threat to injure a person that was transmitted in interstate commerce. For the reasons given below, there is probable cause to believe that JUSTIN STOLL, a resident of the Southern District of Ohio, transmitted the threat, and that in doing so he violated 18 U.S.C. § 875(c) (interstate communication of threat) and 18 U.S.C. § 1512(b)(3) (tampering with a witness by threat).

11. **The Events of January 6, 2021, at the United States Capitol.** On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate met in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.

12. With the joint session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the United States Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building. U.S. Capitol Police were present and attempted to keep the crowd away from the Capitol building and the proceedings underway inside.

13. At approximately 2:00 pm, some protesters broke through police barricades and forced their way to the exterior façade of the Capitol. At the time, the joint session was still

underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 pm, individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.

14. Shortly thereafter, at approximately 2:20 pm, members of the U.S. House of Representatives and U.S. Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the U.S. Congress was effectively suspended until shortly after 8:00 pm.

15. **Identification of "Th3RealHuckleberry" as JUSTIN STOLL.** On January 8, 2021, the FBI National Threat Operations Center received an online tip about threatening posts made by users of the smartphone application "Clapper." The tip asserted that Clapper had been used by right-wing content creators to plan the attack on the Capitol Building on January 6, 2021. The tip added that members of Clapper had used the words "coup" and "insurrection" to describe their planned actions.

16. The tip further asserted that Clapper user "Th3RealHuckleberry" had posted a video in which he had made concerning statements about politicians.

17. The FBI is currently reviewing Th3RealHuckleberry's videos. I have not yet found the specific video mentioned by the tipster in which the speaker allegedly made concerning statements about politicians.

18. Based on my training and experience and the information described below, I believe that the user of Clapper username "Th3RealHuckleberry" is JUSTIN STOLL, a resident of the Southern District of Ohio.

4

19. An open-source query for Clapper username "Th3RealHuckleberry" resolved to Clapper account @Th3RealHuckleberry. @Th3RealHuckleberry's profile page showed several photos of the same person: a white male who appears to be in his late 30s or early 40s. Based on my training and experience and the context of these images, I believe that these photos show the individual who operates the account.

20. A Facebook query for "Th3RealHuckleberry" revealed a Facebook profile page for a person identified as a "Talent/Brand Manager at Th3 Real Huckleberry." Review of the Facebook page led to the discovery of the Facebook page for an individual I will call T.S. That Facebook profile shows a woman standing with a man who appears to be the same individual shown on the profile picture for Clapper user Th3RealHuckleberry.

21. An open-source query on T.S. led to the discovery of a listed relative named JUSTIN STOLL. A driver's license query for JUSTIN STOLL revealed an active Driver License with a DMV photo. The photo was a positive match to the user portrayed in Th3RealHuckleberry's photos and videos.

22. Law enforcement databases list the PREMISES as STOLL's address. FBI agents have conducted surveillance of the PREMISES in recent days and confirmed that STOLL resides there.

23. **Videos showing that STOLL was present with protestors outside the United States Capitol on January 6, 2021.** On January 12, 2021, FBI Cincinnati learned of a video that had recently been posted to Th3RealHuckleberry's Clapper account. The video shows STOLL asking his viewers if he should wear a black United States flag during his trip to Washington, DC. Based on my training and experience and my review of the YouTube videos described below, I believe that STOLL was referring to the January 6, 2021 trip to the U.S.

5

Capitol Building. STOLL then explains what the black flag means: "[N]o enemy combatants will receive aid. You will get no quarters from me. Basically, if you are an enemy combatant, you will be shot on sight....I know this is the end-all flag. This is the it's-too-late-to-give-a-shit flag."

24. FBI agents also reviewed videos on the YouTube channel for user "Th3Real Huckleberry." The videos show a white male in a crowd of individuals gathered outside the Capitol Building in Washington, DC. Based on my review of STOLL's driver's license, and the fact that the YouTube account username is the same as STOLL's Clapper username, I believe that the individual pictured in the videos is STOLL.

25. The videos show STOLL outside the United States Capitol with other protestors. In one video, STOLL pans the camera around to show his face. Other YouTube videos on Th3RealHuckleberry's channel show various angles of STOLL's face throughout the day as he participates in the activities at the Capitol.

26. In one of the videos, STOLL can be heard saying, among other things, "D.C. is a motherfucking war zone! D.C.'s a war zone! D.C.'s a war zone! . . . You ain't got enough cops, baby! We are at war at the Capitol. . . . We have taken the Capitol. This is our country."

27. **STOLL's Threats Towards a Concerned Citizen.** In response to Th3Real Huckleberry's YouTube videos showing his activity at the Capitol, STOLL received online responses from other online users who claimed he should be arrested for his activity.

28. On or about January 7, 2021, an online user posted the following comment on one of STOLL's videos:

> Cool I'm glad I saved this video lol I hope you really went in the capitol bldg. You'll have 10 years of free room and board waiting for you.

6

29. Shortly thereafter, STOLL posted a video response to the online user in which he showed a screenshot of the online user's comment and then said:

> Snitch bitch first thing in the morning. Let's see what the rat fuck has to say, shall we? Cool, I'm glad I saved this video, lol. I hope you really went into the capitol building. You'll have 10 years of free room and board waiting for you. Well, that shows your fucking ignorance because clearly, the capitol building is owned by the people, so again, nothing will happen. Secondly, I never admitted I went into it, did I? Go watch the video again. Daddy's not stupid. [Wink.] Third, *if you ever in your fucking existence did something to jeopardize taking me away from my family, you will absolutely meet your maker. You can play that for the D.A. in court, I don't care. If you ever jeopardize me, from being with my family, you will absolutely meet your mother fucking maker, and I will be the one to arrange the meeting.* So go ahead and play that shit, bitch. Keep this video. You might need it one day.

30. STOLL's demeanor in the video is serious and aggressive. Below is a screenshot from the video:

7



31. Based on the foregoing, there is probable cause to believe that JUSTIN STOLL, a resident of the Southern District of Ohio, has violated 18 U.S.C. § 875(c) (interstate communication of a threat) and 18 U.S.C. § 1512(b)(3) (tampering with a witness by threat).

## TOUCH ID AUTHORIZATION

32. In my training and experience, it is likely that the PREMISES will contain at least one electronic device that contains evidence of, or was used to commit, the offenses under investigation.

8

33. I know from my training and experience, as well as from information found in publicly available materials, including those published by Apple and Google, that some smartphone models, such as iPhones and Google Pixels, offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

34. If a user enables Touch ID on a given device, he or she can register several fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor. In my training and experience, users of devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

35. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. For example, with Apple devices, these circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

36. The passcode or password that would unlock the device(s) found during the search of the Premises is not known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of the device(s) found during the search of the Premises to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

37. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the Subject Premises to press their finger(s) against the Touch ID sensor of the locked device(s) found during the search of the Subject Premises in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.

38. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled device via the fingerprints on thumbs or index fingers. In

the event that law enforcement is unable to unlock the device(s) found in the Subject Premises as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

39. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the Subject Premises to the Touch ID sensor of any device(s), such as an iPhone or Google Pixel, found at the Subject Premises for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## AUTHORIZATION REQUEST

40. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41, to search the PREMISES in Attachment A for the items described in Attachment B.

Respectfully submitted,

CALEB YOKLEY, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 14, 2021

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Description of Premises to be Searched

The Premises to be searched is 250 South Nelson Ave., Lot 72, Wilmington, Ohio, further described as a prefabricated mobile home, predominantly white in color, with the number "72" clearly displayed on the front of the structure.





## ATTACHMENT B

### Particular Things to be Seized

All evidence and information relating to violations of Title 18, United States Code, Sections 875(c) (Interstate Threats) and 1512(b)(3) (Tampering with a Witness by Threat) involving Justin Stoll, including without limitation:

1. Cellular or satellite phones;
2. Any computer or digital medium that is capable of storing photos or video;
3. Weapons that may be used in connection with the threats, including firearms and ammunition;
4. All records or evidence relating to any social media accounts, passwords, or monikers used by Justin Stoll.
5. All records or evidence pertaining to Justin Stoll's whereabouts and activities from January 1, 2021, to the present.
6. All records or evidence relating to Justin Stoll's travel to and activities in Washington, D.C. on or about January 6, 2021.

With respect to any phones seized during the execution of the search of the Premises described in Attachment A ("PHONE"), law enforcement personnel are authorized to press the fingers (including thumbs) of Justin Stoll to the Touch ID sensor of the PHONE, such as an iPhone or Google Pixel, found at the Premises for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

For any computer or storage media ("COMPUTER"), including smart phones and satellite phones, seized pursuant to this warrant, law enforcement may search for:

1. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

2

browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2. evidence indicating how, where, and when the COMPUTER was accessed or used to determine the chronological and geographical context of access, use, and events relating to crime under investigation and to the COMPUTER user;

3. evidence indicating the COMPUTER user's state of mind as it relates to the crime under investigation;

4. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

5. evidence of the times the COMPUTER was used;

6. All records or evidence relating to any social media accounts, passwords, or monikers used by Justin Stoll.

7. All records or evidence pertaining to Justin Stoll's whereabouts and activities from January 1, 2021 to the present.

8. All records or evidence relating to Justin Stoll's travel to and activities in Washington, D.C. on or about January 6, 2021.

This warrant authorizes a review of the electronic devices seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.